IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EARNEST L. CORBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15cv771-SRW |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Earnest L. Corbin commenced this action on October 21, 2015, pursuant to

42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner

denying his application for disability insurance benefits and Supplemental Security

Income.  (Doc. 1, 12).  Plaintiff alleged disability as of March 15, 2013 due to pinched

nerves, shoulder pain, back pain, neck pain, headaches, high blood pressure, chronic cough,

dizziness, and numbness in the arms, hands, hips and legs.  (Doc. 13 at 2-3, 14-2 at 12).

On May 27, 2015, Administrative Law Judge John B. Langland ("the ALJ") issued an

adverse decision.[3]  (Doc. 14-2 at 12-23). The Appeals Council denied plaintiff's request

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting
Commissioner of Social Security, as the defendant in this lawsuit. The Clerk of Court is DIRECTED to
take the appropriate steps to reflect this change on the docket sheet.

[2] For the purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was
effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time of the ALJ's
decision and the filing of this appeal.

[3] Plaintiff was represented by counsel at the hearing before the ALJ.  (Doc. 14-2 at 12).

for review, and the ALJ's decision became the final decision of the Commissioner.  (Id. at 2-8).

In the instant appeal, the plaintiff requests that the court remand this cause to the Commissioner under sentence four of § 405(g).  (Doc. 12). This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to entry of final judgment by the Magistrate Judge. See 28 U.S.C. § 636(c). (Doc. 9, 10).  For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be affirmed. Plaintiff also moves for an award of reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 241(d) and for an extension of time to file an application for 42 U.S.C. § 406(b) attorney's fees. (Doc. 12 at 14). Because the Commissioner's decision is affirmed, the motions will be denied.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Richardson v. Perales, 402 U.S. 389, 390 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id.  It is "more than a scintilla, but less than a preponderance." Id.  A reviewing court "may not

decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)   whether the claimant can perform his or her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561, 562-63 (7th Cir. 1999); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

Pope, 998 F.2d at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. Id.

## DISCUSSION

The ALJ concluded that the plaintiff suffers from the severe impairments of degenerative disc disease, degenerative changes of the cervical spine, and a history of shoulder arthropathies, and that the plaintiff does not have an impairment or combination

of impairments that meet or medically equal a listed impairment.  (Doc. 14-2 at 14-15).

The ALJ made the following RFC determination:

> [T]he claimant has the [RFC] to perform a range of "medium work," as that
> term is otherwise defined in 20 CFR 404.1567(c) and 416.967(c).
> Specifically, the claimant can lift and carry up to 50 pounds occasionally and
> 25 pounds frequently.  He can push and pull within those same exertional
> limits.  He can stand or walk about 6 hours and can sit for at least 6 hours out
> of an 8-hour workday.  He can perform tasks not involving the climbing of
> ladders, ropes, or scaffolding.  He can reach overhead on only an occasional
> basis.  He can perform work in a controlled environment not involving
> exposure to temperature or humidity extremes or unprotected heights.  He
> can perform tasks not involving operation of vibrating tools or equipment.

(Id. at 15).  At step four, the ALJ found that the plaintiff can perform his past relevant work

as a Cylinder Batcher / Warehouse Worker; Quality Control Tester; Cloth Bleacher; Dye

Tub Operator; Cloth Shrinker; and Napper Tender.  (Id. at 20).  The ALJ made alternative

findings as step five, based in part on the testimony of a vocational expert, that the plaintiff

can perform other jobs that exist in sufficient numbers in the national economy.  (Id. at 21-

22). The ALJ's findings resulted in a determination that the plaintiff is "not disabled." (Id.

at 22).

The plaintiff makes four arguments in favor of remand.  First, he asserts that "the

ALJ's inaccuracies and mischaracterizations taint the record and do not rise to substantial

evidence." (Doc. 12 at 4-8).  Second, the plaintiff challenges the ALJ's "evaluation of the

medical opinions of record."  (Id. at 8-12).  Third, he argues that the ALJ misapplied the

pain standard.  (Id. at 12-13).  Finally, the plaintiff contends that the ALJ "failed to properly

consider the side effects of [the plaintiff's] prescribed medication upon his ability to work."

(Id. at 13-14). The Commissioner opposes remand.  After careful consideration, the court

finds that the ALJ's decision is based on substantial evidence and that proper legal standards were applied.

I.     **The ALJ did not mischaracterize the administrative record.**

The plaintiff argues that two of the ALJ's findings regarding the administrative record constitute mischaracterizations that rise to the level of reversible error: (1) the ALJ's discussion of the results of a November 18, 2014 MRI of plaintiff's cervical spine; and (2) the ALJ's statement that "there is no evidence or opinion from the [plaintiff's] physicians that his conditions were disabling."  (Doc. 12 at 4, 6 (citing and quoting Doc. 14-2 at 17-18)).

The ALJ "specifically" found that the November 18, 2014 MRI "confirmed degenerative changes with otherwise only mild to moderate findings."  (Doc. 14-2 at 18).  Consistent with the ALJ's findings and the MRI results themselves, the plaintiff observes that the physician who reviewed the MRI wrote the word "moderate" six times and the words "mild-to-moderate" once.  (Doc. 12 at 4-5 (quoting Tr. 457-58)).  The plaintiff argues that the MRI results demonstrate "significant abnormalities" because of mild or moderate neural foraminal stenosis at five different discs and mild or moderate spinal canal stenosis at three discs.  (Id.).  In other words, the plaintiff argues that the number of mild to moderate stenosis findings "is far more objectively significant [than] 'otherwise only mild to moderate findings'" such that the ALJ should have concluded that the plaintiff suffered from significant abnormalities.[4]  (Id. (quoting Doc. 14-2 at 18)).  However, the

---

[4] Dr. Jason Hoover, M.D., signed the reported results of the November 18, 2014 MRI.  (Doc. 14-8 at 121). According to Dr. Hoover's "impression," the plaintiff presented with "[m]ultilevel degenerative disc

plaintiff does not identify any medical source testimony or other evidence to support such a finding based upon the MRI results.  Even if the plaintiff identified such evidence, it would be inappropriate for the court to reweigh the administrative record. This court is limited to determining whether there is substantial evidence to support the Commissioner's decision. See Dyer, 395 F.3d at 1210 (citing Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (holding that a district court erred in reversing an ALJ's denial of disability benefits because substantial evidence supported the ALJ's decision)).  "The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (citing Laffoon v. Califano, 558 F.2d 253, 254 (5th Cir.1977)).

The court independently reviewed the November 18, 2014 MRI results, and the ALJ did not mischaracterize that evidence. The results are as the ALJ describes. In addition, the MRI results support the ALJ's determination of "degenerative changes with otherwise only mild to moderate findings."  (Doc. 14-2 at 18 (citing Doc. 14-8 at 90-92)).  Substantial evidence supports the ALJ's characterization of the November 18, 2014 MRI results.

The plaintiff also argues that remand is appropriate because of the following mischaracterization by the ALJ: "[T]here is no evidence or opinion from the claimant's physicians that his conditions were disabling." (Doc. 14-2 at 17).  Plaintiff is correct; that statement by the ALJ is a mischaracterization of the record.  However, its inclusion in the

---

disease with multilevel spinal canal and neural foraminal stenosis[.]"  (Id. at 120).  The words "mild" and "moderate" appear in Dr. Hoover's report; the word "significant" or its synonym do not.  (Id.).

written decision is clearly a mistake or oversight.  Two pages after the erroneous statement, the ALJ discusses at length the opinions of plaintiff's physicians, Dr. James Temple, M.D., and Dr. Ghayas Habach, M.D., M.P.H., who provided written testimony that, in their opinions, the plaintiff is disabled.  (Id.).  The ALJ explains the weight assigned to those opinions, which the court discusses in greater detail in Section II, *infra*.  (Id.).  The plaintiff neglects to mention that the ALJ devotes two single-spaced pages to discussing the plaintiff's physicians' opinions that the plaintiff is disabled in arguing that this matter should be remanded because the ALJ inexplicably stated in a previous section of the written decision that "there is no evidence or opinion from the claimant's physicians that his conditions were disabling." In short, the plaintiff's argument on this point is premised on, to borrow the plaintiff's word, a mischaracterization of the ALJ's written decision.  The mischaracterization of the record by the ALJ, which the ALJ subsequently clarifies in detail, is a harmless error.

II.   **The ALJ's decisions with regard to the medical evidence of record are based upon substantial evidence and are in conformity with proper legal standards.**

In support of the RFC and the adverse disability determination, the ALJ afforded "substantial weight" to the opinions and findings of an examining consultative physician, Dr. Celtin Robertson, M.D., and the ALJ decided that Dr. Robertson's findings are "generally consistent with the other objective evidence of record."  (Doc. 14-2 at 18).  On October 2, 2013, the plaintiff underwent a physical examination by Dr. Robertson.  (Id. at 17; Doc. 14-8 at 46-50).  The ALJ remarks that the plaintiff's "chief complaint" was "drainage."  (Id.; see also Doc. 14-8 at 46).  Nevertheless, and while seemingly unrelated

to plaintiff's complaints of "drainage," x-rays were performed of plaintiff's right shoulder and lumbar spine in concert with Dr. Robertson's examination.  (Doc. 14-2 at 18; Doc. 14-8 at 43-44).  The ALJ accurately reports that the plaintiff's right shoulder x-ray produced a "negative" result, and the x-ray of the plaintiff's lumbar spine "was similarly unremarkable, showing ossification at L3-4." (Id.).  The ALJ also explains that the plaintiff "mentioned" to Dr. Robertson that he paid "someone else to mow his lawn due to cervical neck pain" and that "he still managed to rake and trim hedges, along with other household activities, such as preparing meals, doing laundry, and washing dishes."[5] (Id.).  Dr. Robertson concluded that the plaintiff had "no limitations" as to standing / walking, sitting capacity, lifting / carrying capacity, fine and gross manipulative activities, postural activities, and workplace environmental activities.  (Doc. 14-8 at 49-50).

The plaintiff argues that the ALJ erred by assigning less than substantial weight to the medical source statements provided by a one-time examiner, Dr. Temple,[6] and

---

[5] Unrelated to Dr. Robertson's examination, the ALJ stated that,

> At the hearing, the claimant admitted that he continued to work as a minister at his church, earning approximately $800 per month for performing duties such as delivering a weekly sermon and tending to ill members [of his congregation].  While these earnings clearly do not meet the threshold for substantial gainful activity, the undersigned finds that his continued work activity is justifiably factored into the credibility of the claimant's allegations of disability.

(Doc. 14-2 at 14).  The objective evidence that plaintiff continues to work as a minister provides support for the ALJ's assignment of substantial weight to Dr. Robertson's opinion.

[6] Dr. Temple is not a treating medical source.  The Commissioner concedes that Dr. Temple is an acceptable non-treating medical source and that, similar to a treating physician, the ALJ must consider "the source's treating and examining relationship with the claimant, the evidence supporting the opinion, its consistency with other evidence, the source's specialty, and other factors." (Doc. 13 at 7 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  The ALJ acknowledges and meets this standard in analyzing Dr. Temple's medical source statement.  (Doc. 14-2 at 19-20).

plaintiff's treating physician, Dr. Habach. However, the ALJ adequately explained his basis

for discrediting the opinions of Dr. Temple and Dr. Habach.

> The ALJ explains that, on November 25, 2014, Dr. Temple

> opined that the claimant "is disabled at this time;" however, he provided no indication as to when the claimant's symptoms became disabling. It should be noted that Dr. Temple did not appear to have previously treated the claimant for his conditions and was sought for an opinion *after* the claimant's hearing before the [ALJ]. Here, the claimant alleged the onset of lower back pain after standing 15 minutes and sleep disturbance due to the pain but admitted being an ordained minister with his own church. Dr. Temple indicated marked decreased range of motion in the claimant's neck and marked tenderness in the claimant's lumbar spine due to spasms along with decreased range of motion in his hips and knees. Dr. Temple completed a medical source statement ("MSS") in support of his opinion that the claimant was disabled, finding that the claimant could only lift and carry up to 20 pounds, sit up to 4 hours, and sit or walk 2 hours each in a normal 8-hour workday. He also opined that the claimant would be absent more than 4 days per month, never could perform any postural activities, and could not work 8 hours per day, 5 days per week, which, coincidentally, mirrors the assertion made by the claimant's representative at the hearing a few days earlier (Exhibit 13F).

> Per 20 CFR 404.1527, the [ALJ] must consider several factors in evaluating an MSS, such as how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; and whether the source has a specialty or area of expertise related to the individual's impairment(s). Dr. Temple examined the claimant only once and absolutely nothing in the longitudinal objective record substantiates his MSS regarding the claimant's conditions, especially in light of the claimant's admissions regarding his various daily activities – many of which involved postural activities that Dr. Temple found he could never perform. Given this incongruence, the [ALJ] justifiably afforded Dr. Temple's MSS little weight.

(Doc. 14-2 at 19-20).

> The ALJ made the following findings with regard to Dr. Habach's opinion that the

plaintiff is disabled:

Dr. Habach … submitted an opinion after the hearing on January 9, 2015 that the claimant was disabled.  He referenced the claimant's most recent [November 18, 2014] MRI findings and wrote that he had consulted with a neurologist, Wael Hamo, M.D., who agreed that the claimant's "cervical spine has reached a critical stage and warrants referral to a neurosurgeon and a permanent restriction from work." An MRI of the cervical spine in November of 2014 showed only mild-moderate degenerative changes (Exhibit 11F).  Despite acknowledging that he had only treated the claimant since September 2013, Dr. Habach still opined that [the plaintiff] had been unable to lift and carry objects weighing more than 5 pounds, walk a city block, and stand or walk longer than 15 minutes uninterrupted since March 2013, which is wholly inconsistent with the claimant's admissions regarding his capabilities in his function report submitted in September 2013. Notwithstanding the incongruence of Dr. Harbach's findings with his own treatment notes, such glaring inaccuracies and inconsistencies reveals (sic) the unreliability of this [medical source statement]. Therefore, it received little weight.

(Doc. 14-2 at 20).

The Commissioner must specify what weight is given to a treating physician's opinion and any reason for giving it no weight at all.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) and Wiggins v. Schweiker, 679 F.2d 1387, 1389-90 (11th Cir. 1982)).  Failure to do so is reversible error.  Id. (citations omitted).  The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhard, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when:

- the treating physician's opinion was not bolstered by the evidence,

- the evidence supported a contrary finding; or

- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

Id. at 1241 (citation omitted).

The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. Lewis, 125 F.3d at 1440 (citation omitted); see also 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam).

The plaintiff acknowledges that the ALJ provided reasons for discrediting Dr. Habach's and Dr. Temple's opinion evidence and that those reasons are based upon evidence in the record. (Doc. 12 at 9-11). The plaintiff finds the ALJ's reasoning to be "quite laughable," and he disagrees with the ALJ's conclusions.[7] (Id. at 10). However, the court cannot reweigh the evidence; it is limited to analyzing whether substantial evidence exists and the ALJ articulated good cause for giving less than substantial weight to a

---

[7] The plaintiff asserts that he was diagnosed with "severely advanced degenerative disc disease with disc desiccation involving multiple levels of the cervical spine." (E.g. Doc. 12 at 10-11). That assertion appears to be based on Dr. Habach's notation in the January 9, 2015 medical source statement that the plaintiff complains of "typical symptoms expected in cases of severely advanced degenerative disc disease with disc desiccation involving multiple levels of the cervical spine." (Doc. 14-9 at 3). A physician's observation that a patient's complaints of symptoms are typically associated with a condition is not necessarily a diagnosis. In this instance, Dr. Habach's medical source statement reasonably suggests a different diagnosis based on objective medical tests. Dr. Habach states that a comparison of MRI results from February 14, 2008 and November 18, 2014 "demonstrates that [the plaintiff] has multilevel degenerative disc disease with multilevel spinal canal and neural foraminal stenosis." (Id.). Contrary to plaintiff's assertion, Dr. Habach does not make a finding that the MRI results show a "severe" condition.

treating medical source's opinion.  The ALJ's written decision meets both criteria.  (e.g., Doc. 14-8 at 42-50, 52-63, 90-92, 115-121; 14-9 at 2-6).  Accordingly, there is no legal error.

III.    **The ALJ properly applied the pain standard.**

To demonstrate that pain renders him disabled, the plaintiff must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" Edwards v. Sullivan, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)); see also Holt, 921 F.2d at 1223.  If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons."  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Jones v. Bowen, 810 F.2d 1001, 1004 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ properly applied those legal principles. He partially credited plaintiff's subjective testimony and complaints in formulating the RFC assessment.  (Doc. 14-2 at 16-17, 19-20).  However, the ALJ concluded that, while plaintiff's medically determinable impairments could reasonably be expected to produce the alleged pain symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. The ALJ articulated reasons for discrediting plaintiff's testimony.  See Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable,

and that determination will be reviewed for substantial evidence.") (citing <u>Wilson v. Heckler</u>, 734 F.2d 513, 517 (11th Cir. 1984)).

The ALJ reached his credibility determination based, in part, on his personal observations of the plaintiff at the hearing. Also, the ALJ found that plaintiff's testimony about pain and its limiting effects was not supported by the medical evidence of record and conflicted with plaintiff's testimony about his daily activities. Thus, the ALJ fulfilled his obligation to articulate reasons in support of his credibility determination. Those reasons are based on substantial evidence. (Doc. 14-2 at 16-20).

IV.     **The ALJ considered the side effects of the plaintiff's medication.**

At his hearing before the ALJ, the plaintiff testified that he takes Tramadol for pain, that the medication made him "get drowsy and sleepy" such that he could not perform his previous job duties, and that his former employer would not allow him to work while taking Tramadol. (Doc. 14-2 at 49-50). "The ALJ is responsible for making a finding regarding the side effects" of a plaintiff's medication. <u>Harris v. Astrue</u>, 2010 WL 3583047, at *7 (M.D. Ala. Sept. 7, 2010) (citing <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1032 (11th Cir. 1986)). The plaintiff argues that "the ALJ failed to provide any meaningful rationale with respect to the effects and resulting limitations caused by medication side effects into [the ALJ's] RFC finding." (Doc. 12 at 13) (emphasis omitted). Also, the plaintiff asserts that "the ALJ failed to make an administrative finding regarding the side effects alleged by [the plaintiff]." (<u>Id.</u> at 14). These two arguments are contradictory; the latter accuses the ALJ of utterly failing to address the plaintiff's testimony about the side effects of Tramadol

while the former acknowledges that the ALJ provided a "rationale."  Setting aside the incongruity, neither argument is availing.

The ALJ expressly references the plaintiff's testimony that his medication "resulted in drowsiness." (Doc. 14-2 at 19).  Thus, insofar as the plaintiff asserts that the ALJ "failed to make an administrative finding" about the side effects of the plaintiff's medication, the plaintiff inaccurately represents the ALJ's written decision.

Also, the ALJ made a credibility finding regarding the whole of plaintiff's testimony, including his testimony about the side effects of Tramadol.  The ALJ determined that,

> [t]o the extent [plaintiff's] testimony was consistent with [the medical, objective, and subjective evidence discussed in the written decision], it is reflected in the [RFC].  Beyond that extent, the [plaintiff's] testimony simply was not consistent with or supported by the medical or objective evidence of record.

(Id.).  A district court "will uphold the ALJ's decision even if his reasoning is not ideally clear" as long as the ALJ gives "the court some indication that he considered the side effects of [a plaintiff's] medications on [his] ability to work." Harris v. Astrue, 2010 WL 3583047, at *7 (citing Dixon v. Astrue, 312 F. App'x 226, 229 (11th Cir. 2009)).  While not "ideally clear," the ALJ's written decision provides enough information for the court to conclude that the ALJ considered and rejected the plaintiff's subjective testimony regarding the side effects of Tramadol.

The ALJ's credibility findings are based in large part on the disparity between the plaintiff's testimony about the side effects of medication and the plaintiff's daily life activities, including the fact that the plaintiff

> still pastored a church and delivered a sermon each week along with visiting
> ailing members … he was responsible for making breakfast, sweeping,
> washing dishes, washing laundry, ironing clothing, and shopping with his
> daughter … albeit with some intermittent rest periods … [and] that he could
> drive a vehicle.

(Doc. 14-2 at 19).   Accordingly, substantial evidence supports the ALJ's credibility findings as to the plaintiff's subjective testimony regarding the side effects of Tramadol and the ALJ did not commit an error of law.

## CONCLUSION AND ORDER

Upon consideration of the parties' briefs and the record, the court concludes that the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be AFFIRMED by separate judgment.

In addition, it is

ORDERED that plaintiff's motion for an award of reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 241(d) and motion for an extension of time to file an application for 42 U.S.C. § 406(b) attorney's fees (Doc. 12) are DENIED.

DONE, on this the 30th day of March, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge